**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**GREGORY GIRON,**<br>**DYLAN GIRON,**<br>**ELMER BONILLA,**<br>**CHRISTIAN RODRIGUEZ,**<br><br>              **Defendants.** | **Case No. 24-cr-00113 (RC)** |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

Dylan Giron was an active participant in a carjacking conspiracy that spanned two months, injured four members of our community, threatened five others with firearms, stole or carjacked at least twelve vehicles, and resulted in the loss of thousands of dollars of property. Digital evidence from his phone reflects internet searches and photos of the carjacking locations and vehicle retrievals, as well as photos that appear to be taken inside of those vehicles.   Messages that Mr. Giron exchanged with other members of the conspiracy indicate his awareness and involvement in the charged offenses.   Mr. Giron was caught in the act of destroying evidence, specifically the proceeds of some of the carjackings.   Moreover, his phone reflects his extensive possession of and trafficking in firearms, despite being legally prohibited from doing so. While Mr. Giron does not have a lengthy criminal history, his prior conviction involves the possession of multiple firearms, drugs, and hundreds of rounds of ammunition.   His history and conduct in this case reflect that he has the ready ability to acquire firearms and no hesitation to do so.

Considering the factors set forth under 18 U.S.C. 3142(g), there are no that no conditions or combinations of conditions that will reasonably assure the safety of our community should

Mr. Giron be released.

## **BACKGROUND**

Defendants Dylan and Gregory Giron, Elmer Bonilla, and Christian Rodriguez are charged in a conspiracy in which they carjacked or attempted to carjack eight vehicles from nine victims while armed with firearms, stole another four vehicles, stole items from yet another vehicle, fled from law enforcement multiple times, and attempted to destroy evidence on multiple occasions. The facts of each offense and the role of each defendant are set forth below.

### *December 12, 2023 Vehicle Theft (658 Farragut Street NW, Washington, D.C.)*

The complaining witness ("CW-1") reported that they parked their black Honda Accord in front of their building but when they returned in the morning, the car was gone.   The vehicle was recovered two days later at 1508 Crittenden Street NW.   Law enforcement recovered an ID and debit card in the name Gregory Giron inside the vehicle.

### *January 5, 2024 Carjacking (3900 Georgia Ave Northwest, Washington, D.C.)*

On January 5, 2024, at approximately 8:40 PM, CW-2 parked their car, a Hyundai Elantra bearing a Virginia tag, in the 3900 block of Georgia Avenue NW.   Two suspects approached CW-2 from the west side of the parking lot. CW-2 saw the suspects approach, and believing he was about to be robbed, put his hands in his pockets.   One suspect demanded CW-2's property, but CW-2 initially refused.   In response, the second suspect produced a black handgun and pushed it into CW-2's stomach while the other suspect punched CW-2 in the face several times with his fist. The first suspect took CW-2's keys out of his pocket while the second continued pointing his gun at CW-2.   The suspects entered CW-2's vehicle and fled westbound on Randolph Street Northwest.

CW-2 described the suspects as young black males approximately 5'5" in height, both with skinny builds. Both suspects wore face masks. The second suspect was armed with a black handgun. CW-2 described the gun as large and possibly gray. CW-2's vehicle was later recovered on January 16, 2024, in Reisterstown, Maryland, which is the town in Maryland where CW-1's vehicle was recovered.

Law enforcement subsequently obtained cellsite location data for Gregory Giron's cellphone, which placed him in the vicinity of the offense location at the approximate date and time of the offense.

### January 12, 2024 Theft from Vehicle (1706 Hampshire Green Lane, Silver Spring, MD)

On January 12, 2024, CW-3 reported that he woke up and saw a man standing near the trunk of his car with the trunk open. A dark four-door sedan was parked in front of CW-3's vehicle. CW-3 watched as the man moved to the passenger side door of the vehicle. CW-3 went outside and the suspect fled. CW-3 reported that multiple items were stolen from their vehicle including debit cards, a backpack, gloves, a jacket, as well as a laptop, tablet, and headphones. As set forth below, those items were recovered four days later in the Hyudnai Elantra, which had been carjacked on January 5, 2024. CW-3 was shown a picture of the recovered Hyundai and stated that it was similar in appearance to the vehicle used by the suspect.

### January 16, 2024 Auto Theft (6 Hanover Pike, Reisterstown, Maryland)

On January 16, 2024, at approximately 4:00 p.m., members of the Baltimore County Police Department were dispatched to a restaurant located at 6 Hanover Pike, Reisterstown, Maryland, for a reported car theft.

Officers met with CW-4, who reported that their car was missing.   CW-4 noted that they had gone out to the car earlier to turn it on and warm it up.   CW-4 then went back inside and left the keys in the ignition and the door unlocked.   CW-4's vehicle was a 2023 white Kia Sportage with Maryland tags.   At the time it was stolen, the Kia Sportage was parked at the rear of the building near the fence line.

Officers recovered surveillance video from the offense location.   The footage showed a dark-in-color 4-door sedan parked next to the Kia Sportage.   The 4-door sedan appeared to be a Hyundai.   One male suspect exited the driver's side of the Hyundai and opening the driver's side door to the Kia Sportage. The suspect re-entered the Hyundai and left the parking lot. The same suspect re-entered the parking lot on foot, got into the Kia Sportage, and drove it away.   Based on the footage, the suspect appeared to be a black male, approximately 20 to 30 years old, wearing a black sweatshirt, light-colored sweatpants, and black sneakers.

The Hyundai Elantra carjacked from CW-2 was recovered that same day, January 16th, in a parking lot adjacent to where the Kia Sportage was stolen. Inside of the Hyundai, law enforcement recovered a license plate that had been previously reported stolen from 5 Main Street, Reisterstown, MD—close to where the theft of the Kia Sportage occurred.

Cellsite location data for Gregory Giron's cellphone places him in the vicinity of the theft of the Kia Sportage at the approximate date and time of the theft.

***January 18, 2024 Vehicle Theft (10375 Red Run Boulevard, Owings Mills, MD)***

On January 18, 2024, at approximately 12:42 a.m., CW-5 reported that they parked their Mazda CX5 at a gas pump and went inside to pay, carrying their key and wallet with them.   While inside, he noticed two young white or light-skinned Hispanic men inside.   The two left the store,

and suddenly CW-5 heard tires screeching and saw his car being driven away.   Surveillance footage reflected that the suspects initially had parked in a white Kia Sportage.   One suspect then exited the Kia and stole the Mazda.   While no cellsite location data was available for Gregory Giron during the offense date and time, cellsite location data from 1:35 a.m. (less than one hour after the offense) placed him in Owings Mills.   Additionally, Gregory Giron's debit card was used at an Exxon station in Owings Mills on January 17 or 18, 2024.[1]

### *January 23, 2024 Armed Carjacking (7500 Eastern Avenue Northwest, Washington, D.C.)*

On January 23, 2024, at approximately 4:54 a.m., an individual called 911 to report an armed carjacking in the 7500 block of Eastern Avenue Northwest, in Washington, D.C.   MPD responded to the scene and interviewed CW-6.

CW-6 reported that they drove their Dodge Challenger to 7500 Eastern Avenue Northwest and parked across the street to pick up a coworker.   CW-6 stopped in the crosswalk and turned on the car's hazard lights. While CW-6 waited in the car, two suspects approached the driver's door and yelled at CW-6 to exit the car.   One suspect opened the driver's door and struck CW-6 in the head with a black handgun.   CW-6 got out of the car, and the suspect got into the car and drove away.   The other suspect ran towards Hemlock Street Northwest and got into the driver's seat of a white SUV and drove away.

The first suspect was described as a Hispanic male, approximately 19-23 years of age, light complexioned, approximately 5'7" tall, thin build, wearing a gray coat, black pants, and a black ski mask.   The second suspect was described as a Hispanic male, approximately 19-23 years of

---

[1] The records do not differentiate the time the card was used versus the time the payment was processed.   But the records reflect a transaction occurring late in the evening or early morning of January 18, 2024.

age, light complexioned, approximately 5'7" tall, thin build, wearing all black clothing and a black ski mask.

Approximately 35 minutes after the carjacking took place, an individual called 911 to report a suspicious car near the 1700 block of Crestwood Drive Northwest.   The caller reported two suspects emptying the contents of a white sedan and a black sedan into the woods.   MPD responded and saw a white Kia SUV with a DC tag beginning with "GG" occupied by a Hispanic male in the driver's seat.   As the MPD officer passed the Kia, he observed a gray Dodge Challenger and a second suspect fleeing on foot into the woods.   As he passed the Kia, the driver of the Kia reversed, struck a parked car, and drove away.   The suspect in the woods escaped.

The gray Dodge Challenger was confirmed to be the same car that was carjacked from CW-6 earlier that morning.   Officers also observed items in the snow next to the Dodge Challenger.   CW-6 was brought to the scene and identified certain items that belonged to him. CW-6 also identified items that did not belong to him, including a gray North Face jacket recovered from the Dodge Challenger.   CW-6 believed that the jacket was worn by one of the suspects during the carjacking.   CW-6 also reported that his black Nike hooded jacket with "Nike Air" printed on the front was missing from his vehicle, as well as his series 5 Apple Watch and keys containing his Dodge key fob, two house keys, and a mail key.   A black North Face backpack containing multiple plastic bags, an orange inhaler, an orange Insulin Aspart FlexpPen, 23 "32 Easy-Touch" sealed syringe tips, and an Onstar 36M Stun Gun was recovered from the front passenger's floorboard of the Dodge Challenger.   CW-6 confirmed that this bag did not belong to them.

Notably, Gregory Giron is both diabetic and asthmatic.   Cellsite location data for Gregory Giron's cellphone places him in the vicinity of the carjacking of the Dodge Challenger at the approximate date and time of the offense, as well as the recovery of the Dodge Challenger at the time the suspects were removing items from the cars.

### January 23, 2024 Attempted Armed Carjacking
### (1500 Decatur Street Northwest, Washington, D.C.)

On January 23, 2024, at approximately 11:17 a.m., MPD was called to a reported carjacking in the 1500 block of Decatur Street Northwest.   CW-7 stated that at approximately 5:55 a.m., CW-7 was sitting in their vehicle, a Dodge Challenger SRT, in the 1500 block of Decatur Street Northwest while their other vehicle, used for work, was heating up.

CW-7 observed a white or light gray SUV, possibly a "Hyundai Ioniq" with unknown tags, traveling northbound in the 4700 block of Piney Branch Road NW.   The SUV turned left and traveled westbound in the 1500 block of Decatur Street NW, before pulling up alongside CW-7's car.   Two suspects exited the SUV.   Both brandished black handguns, approached CW-7's driver side door, and shouted "Get out the car! Get out the car!"   One suspect pulled on the handle of the driver's door and CW-7 responded: "You got it! You got it!"

CW-7 exited the car and backed away.   One suspect entered the driver's seat of the vehicle while the other stood in front of the hood of the vehicle.   CW-7 then heard the suspect in the driver's seat say: "It's a stick! It's a stick!" The suspects abandoned their attempt to steal the vehicle.   The suspects got back into the SUV and fled west in the 1500 Block of Decatur Street Northwest before turning right and traveling north in the 4800 block of 16th Street Northwest.

CW-7 described one suspect as a light complexioned black or Hispanic man, approximately 25-30 years old, approximately 6'0" in height, approximately 200 pounds, with medium build,

wearing a tan hat, unknown clothing, a face covering, and armed with a black handgun, possibly a .9mm Glock.   CW-7 described the other suspect as a man, approximately 25-30 years old, wearing a dark colored jacket, face mask, and armed with a black handgun, possibly a .9mm Glock.

Cellsite location data for Gregory Giron's cellphone device places him in the vicinity of the attempted carjacking of CW-7's car at the approximate date and time of the offense.

### January 24, 2024 Armed Carjacking
### (6400 Block of Luzon Avenue Northwest, Washington, D.C.)

On January 24, 2024, MPD responded to the 6400 block of Luzon Avenue Northwest for report of a carjacking.   CW-8 was interviewed on scene.   CW-8 reported that, at approximately 4:20 p.m., they were parked in their gray Dodge Challenger in the 6400 block of Luzon Avenue Northwest with the vehicle running.

CW-8 was on the phone when they noticed a black Jeep, possibly a Cherokee, pull in front of their car.   CW-8 advised that a suspect exited the rear seat of the Jeep with an assault rifle equipped with a silencer and said something to the effect of "Get the fuck out of the car."   A second suspect appeared on the passenger side of CW-8's car and said something to the effect of, "get the fuck out of the car," while pointing a black handgun with a green laser on it.   CW-8 believed both suspects to be Hispanic because they spoke with Hispanic accents.   The suspects entered CW-8's car and drove away.   CW-8 recalled that a light gray or silver vehicle was behind the Jeep.

In CW-8's car was a black wallet containing a D.C. driver's license, a Cash App debit card, a Capital One credit card, a drill set, and an Apple iPhone.   CW-8 provided descriptions for both suspects.   He described the first suspect as a Hispanic male, fair skinned, 17 to 20 years of age, approximately 5'7 to 5'8 in height, average build, wearing a black in color ski mask, a black in

color coat, and khaki pants.   He described the second suspect as a Hispanic male, fair skinned, 17 to 20 years of age, approximately 5'7 to 5'8 in height, average build, wearing a black ski mask, a black coat, and khaki pants.

Cellsite location data for Gregory Giron, Elmer Bonilla, and Christian Rodriguez's cellphones place them in the vicinity of the carjacking, at the approximate date and time of the offense.   Additionally, according to call records, Gregory Giron, Elmer Bonilla, and Christian Rodriguez called each other before and after the carjacking.

### January 24, 2024 Vehicle Theft (10988 Red Run Blvd, Owings Mills, Maryland)

On January 24, 2024, at approximately 11:55 p.m., a dark Jeep SUV was reported stolen from the Royal Farms gas station located at 10988 Red Run Blvd, Owings Mills, Maryland.   CW-9 reported that they parked their car, exited the vehicle, and entered the gas station.   Based on surveillance footage, a White Kia Sportage entered the parking lot at approximately 11:52 p.m. and parked a few spaces away from the Jeep.   At 11:55pm, an individual consistent in appearance with Gregory Giron, exited the Kia, walked to the Jeep, and entered the Jeep.   The Jeep and Kia drove from the parking lot at a high rate of speed, heading south.

Cellsite location data for Gregory Giron's cellphone places him in the vicinity of the theft of the Jeep at the approximate date and time of the offense.

### January 25, 2024 Armed Carjacking (3215 P Street Northwest, Washington, D.C.)

On January 25, 2024, at approximately 2:03 a.m., CW-10 reported an armed carjacking at 3215 P Street Northwest.   MPD responded and met with CW-10 on scene.   CW-10 reported that, at the time the carjacking occurred, he was working as an armed special police officer (SPO) at the bank located at 3215 P Street Northwest.   As an SPO, CW-10 was issued a 2023 Honda Pilot,

a Smith & Wesson .38 (Serial #CFJ7819), and eighteen rounds of .38 caliber ammunition.   CW-10 initially reported that he had exited the Pilot to check the doors to the bank when two suspects approached him.   CW-10 later clarified that he was sleeping in the driver's seat of his car when the two suspects approached.   One of the suspects was armed with a black handgun that looked like a Glock and pointed the handgun at CW-10.   The two suspects pulled CW-10 out of the vehicle and got into the Pilot before beating him and driving away.   Surveillance footage of the carjacking shows that the suspects arrived in a white Kia Sportage, which followed behind the Pilot at a high rate of speed after it was carjacked.

On January 25, 2024, at 12:24 p.m., MPD was notified that CW-10's Pilot was recovered in the 7200 block of 7th Street Northwest.   CW-10's duty belt was recovered from behind the front passenger's seat, but no firearm was found. Additionally, CW-10's black North Face backpack containing various papers, a gun case, SPO gear, a gray Galaxy smartphone, and a Honda key fob were never recovered.

Cellsite location data for Gregory Giron's cellphone places him in the vicinity of the carjacking of the Honda Pilot, at the approximate date and time of the offense.

***January 25, 2024 Armed Carjacking (217 Pidco Road, Reisterstown, Maryland)***

On January 25, 2024, at approximately 3:50 a.m., Baltimore County Police Officers responded to 217 Pidco Road, in Reisterstown, Maryland for report of an armed carjacking. Officers met with CW-11 and CW-12 on scene.   CW-11 and CW-12 stated that they were in their gray Infiniti Q50 listening to music and smoking with the engine running and the headlights on, when two suspects approached the driver's door from behind.   The two suspects pointed handguns

at the window and ordered the driver, CW-11, out of the vehicle.   CW-11 complied and got out of the car.   The suspects then ordered CW-11 to hand over their Rolex watch and necklace.

Simultaneously, two additional suspects approached the passenger side door, opened it, and ordered CW-12 out of the vehicle.   CW-12 advised that the first suspect appeared to be a white Hispanic male holding a 1911-style handgun.   The second suspect, who did not speak, held a two-foot-long baseball bat as if he was prepared to strike.   The suspects demanded that CW-12 hand over their Citizen Echo Drive Diver's watch and their "Yeezy" shoes.   All four suspects got into the Infiniti and drove away.

The property stolen from CW-11 included a silver/blue Rolex necklace and watch, gray Balenciaga shoes, a blue Moncler jacket, a light green Apple 12 iPhone, white Apple earbuds, and a Navy Federal Credit Union bank card. The property stolen from the CW-12 included a blue Apple 12 Pro Max, white Apple earbuds, a silver Citizen Echo Drive Diver's watch, "Yeezy" shoes, identification cards and other miscellaneous clothing item, including two Nike Tech hoodies.

The suspects were described as Hispanic males, light complexion, 19 – 20 years of age, approximately 5'7", thin build and wearing all black clothing including ski mask.

Cellsite location data for Gregory Giron's cellphone places him in the vicinity of the carjacking of the Infiniti at the approximate date and time of the offense.

### January 25, 2024 Armed Carjacking (5621 Sargent Road, Hyattsville, Maryland)

On January 25, 2024, at approximately 7:47 p.m., Prince George's Police Department responded to the CVS located at 5621 Sargent Road, Hyattsville, Maryland for a reported armed carjacking.   Officers spoke with a CW-13 who reported that they exited the CVS and entered

their car, a 2014 black BMW 428i with Maryland tags.   As CW-13 put the car into reverse, the suspect vehicle, a white SUV, parked behind CW-13's vehicle, blocking their car in.   Two suspects exited the white SUV and approached the driver's side of CW-13's car.   One suspect opened the driver's door and pointed a handgun at CW-13's torso.   The suspects demanded that CW-13 get out of the car.   In fear for his life, CW-13 complied.   The suspects fled in CW-13's car on Sargent Road in the direction of Washington D.C.   CW-13 retained his car's key fob.

CW-13 described the first suspect as a Hispanic male, between 19 - 25 years old, approximately 5'8", slim build and wearing a black bubble jacket, shoes and pants and ski mask. The first suspect was armed with a black handgun with a red laser.   The second suspect was a Hispanic male, between 19 - 25 years of age, 5'9", slim build, black pants and shoes, black bubble jacket, and ski mask.   The second suspect was armed with a black handgun.

During later conversations with law enforcement, CW-13 identified the white Kia Sportage as the car that blocked him in, and identified the handgun recovered after the arrest of Gregory Giron as consistent in appearance to the handgun that was used by the suspects.

Cellsite location data for Gregory Giron and Elmer Bonilla's cellphones place them in the vicinity of the carjacking of the BMW at the approximate date and time of the offense.

### *January 26, 2024 Vehicle Pursuit and Arrest of Gregory Giron*

On January 26, 2024, at approximately 2:37 p.m., a white Kia Sportage SUV bearing D.C. tags GG16XX, hit on a License Plate Reader located in the 5400 block of 16th Street Northwest. As mentioned above, a white Kia Sportage was stolen from 6 Hanover Pike, Reisterstown, Maryland on January 16, 2024.   A white SUV was also used in multiple of the carjackings outlined above, and law enforcement was eventually able to identify a tag number for the Kia

Sportage.   After the Kia Sportage hit on the LPR, MPD voiced a look-out for the Kia Sportage, and the MPD's helicopter (Falcon) located the car traveling in D.C.   Falcon reported the Kia's direction as it traveled through D.C. and ultimately into Hyattsville, Maryland.

The Prince George's Police Department helicopter (Guardian) began following the white Kia Sportage as it entered Hyattsville, Maryland. The Kia Sportage traveled from Riggs Road to Chillum Road, onto Queen Chapel Road, and then to Route 208 where it collided into another vehicle.   Following the collision, the driver of the Kia Sportage continued to drive away through several neighborhoods.   The Kia Sportage traveled on East West Highway, Route 201 (Kenilworth Avenue) and Good Luck Road.   The Kia Sportage turned left into the 7800 block of Good Luck Road.   The vehicle stopped and an individual fled the Kia Sportage.   No other individuals were observed in the vehicle and or fleeing from the vehicle.   The driver fled through the woods, onto I-495, and through a football field, where he was subsequently apprehended.

In the moments leading up to Gregory Giron's arrest, he was communicating with Elmer Bonilla, Christian Rodriguez, and Dylan Giron:

- 3:11 p.m.: Gregory Giron messaged in an Instagram group with Bonilla, Rodriguez, and Dylan Giron, "Law on asssssss"

- 3:13 p.m.: the Kia crossed into PG County, and Falcon surveillance video began recording the pursuit.

- 3:20 p.m.: Bonilla appears to add Rodriguez to the call

- 3:24 p.m.: Dylan Giron calls Rodriguez and is added to the conference call

- 3:28 p.m.: Gregory Giron abandons the white Kia in a field and flees on foot

- 3:35 p.m.: Gregory Giron is arrested.

Gregory Giron was subsequently transported to an area hospital to be treated for asthma. While at the hospital, Giron was wearing a Rolex watch.   A photograph was taken of the watch and shown to CW-11, who confirmed that it was the same watch stolen from him during the carjacking.

### *January 26, 2024 Attempt to Destroy Evidence, Search of Varnum Street Northwest Residence, and Arrest of Dylan Giron*

After arresting Gregory Giron, MPD learned that Gregory Giron resided at 1406 Varnum Street Northwest.   MPD responded to that address to secure the residence in anticipation of a search warrant.   Sometime after MPD arrived at the residence, a tan SUV pulled up to the front of the house and a heavyset Hispanic man exited the SUV.   The individual then used a key to enter the residence.   A few minutes later, MPD observed that same individual exit the rear of the residence carrying a white trash bag.   The individual got back into the tan SUV, and the car began driving away.

MPD stopped the SUV, which had four people in the car.   The front seat passenger was the same individual who had entered and exited 1406 Varnum Street NW, carrying a white trash bag, who was identified as Dylan Giron.   The driver of the vehicle was identified as Dylan Giron's girlfriend, and the two individuals in the backseat were identified as Elmer Bonilla and Christian Rodriguez.   Messages subsequently recovered from Dylan Giron's phone show that Bonilla and Rodriguez were directing Giron to remove the evidence.

MPD retraced the path of the SUV and found the trash bag in the path of the car.   The trash bag contained a blue Moncler coat, an SPO badge, a plastic bag containing an unknown number of live rounds of ammunition, three handgun magazines containing an unknown amount of ammunition, and a separate white trash bag containing a Glock handgun box with two handgun

magazines with ammunition.   In the area near the trash bag, MPD also found a black winter-style coat covering two Glock handgun boxes.   A photograph was taken of the blue Moncler jacket and shown to CW-11, who confirmed that it appeared to be the same jacket stolen from him during the carjacking.

MPD subsequently obtained a D.C. Superior Court Warrant to search 1406 Varnum Street NW (D.C. Superior Court Warrant 2024 CSWSLD 000435).   MPD recovered the following:

a.  A Citizen Echo watch, which appeared to be similar to the watch stolen from CW-10;

b.  A Glock gun strap;

c.  An Empty 9mm box of ammunition; and

d.  One round of 9mm ammunition, 1 round of 10mm ammunition.

After recovering the ammunition in the white trash bag, MPD placed Dylan Giron under arrest for unlawful possession of ammunition.

### *The February 27, 2024 Carjacking (3910 Georgia Avenue Northwest, Washington, D.C.)*

On February 27, 2024, at approximately 11:55 p.m., MPD responded to 3910 Georgia Avenue Northwest, Washington D.C. for a reported armed carjacking.   Officers met with CW-14 on scene, who reported that approximately 20 minutes earlier, at 11:35 p.m., they had parked their car in the rear parking area of the apartment building in the 3900 block of Georgia Avenue Northwest.   CW-14 exited the car and locked the doors.   As they began walking away from the vehicle, two suspects approached them.   The first suspect was a young man wearing dark clothing and was approximately 5'5" to 5'7" tall.   While a ski mask covered his face, CW-14 could tell that he was light skinned but was not certain whether he was black or Hispanic.   The second

15

suspect was a man with dark clothing, but CW-14 could not provide any further description.   The first suspect was carrying a gun and instructed CW-14 to give him everything they had.   The two suspects took CW-14's 2020 silver Toyota Camry and her purse, which contained her iPhone 15 Pro Max, work ID, and house keys.

CW-14 was able to track their iPhone to the intersection of 13th Street and Taylor Street NW, Washington, D.C. where officers later found the phone, abandoned by the perpetrators. MPD officers contacted Toyota, which found GPS information for the car.   Toyota began providing GPS information at 1:05 a.m., approximately one hour and thirty minutes after the carjacking.   GPS data for the car indicated it was in Reisterstown, Maryland.   Baltimore County Police officers responded to the car's location and found the Toyota on Red Run Boulevard in Reisterstown, where it had been involved in a car accident.   Two individuals fled from the crashed vehicle and were arrested. The driver was identified as Gregory Giron and the passenger was identified as a juvenile suspect.

### *Additional Destruction of Evidence by the Co-Conspirators*

After Gregory Giron's arrest on February 27, 2024, law enforcement obtained his recorded jail calls.   On March 11, 2024, Gregory Giron called Rodriguez.   In the call, Giron asked Rodriguez to change his Instagram password.   Rodriguez indicated that he had done so.   During that discussion, Rodriguez advised that, because law enforcement had taken Gregory Giron's phone, he "did the best I could."   Elmer Bonilla indicated that he had reviewed the contents of Gregory Giron's Instagram account and decided "this shit's gotta go."

### *Evidence of Firearms Trafficking by the Co-Conspirators*

Subsequent to his arrest on January 26, 2024, Gregory Giron's cellphone was seized and searched pursuant to a warrant.   Photographs and text messages from the cellphone suggest that Gregory Giron, Elmer Bonilla, and Christian Rodriguez have bought, sold, and otherwise exchanged firearms with each other.   For example, the following photographs found on Gregory Giron's phone reflect the apparent trafficking of firearms:



Messages on the phone corroborate the suspected firearms trafficking:



The phone also contains evidence of trafficking of firearms by Christian Rodriguez.

For example, on August 15, 2023, Gregory Giron and Christian Rodriguez negotiated a deal over the purchase of hollow point ammunition. In another conversation in June 2023, Rodriguez provides instructions to Gregory Giron for carrying out unspecified but apparently

18

clandestine transactions while Rodriguez was out of the country.





On February 4, 2024, before Gregory Giron's second arrest, Rodriguez sent a photograph

of a firearm to Gregory Giron.



On May 15, 2023, Rodriguez sent Gregory Giron images of assault rifles he apparently wanted to purchase and claimed he already possessed a "Kris's vec too tho."   This is an apparent reference to a KRISS Vector assault rifle.[2]   Rodriguez then sent Gregory Giron the following image:

---

[2]  Law enforcement later recovered a KRISS Vector airsoft rifle during a search of Rodriguez's residence.



Rodriguez sent multiple other images to Gregory Giron of firearms that he recently purchased, identifying two newly purchased firearms.   In describing his purchase of firearms, Rodriguez stated: "I got an addiction to this."   Other messages exchanged between Rodriguez and Gregory Giron reflect that Rodriguez appears to be an experienced firearms trafficker.   On May 18, 2023, Gregory Giron asked Rodriguez why he had left a group chat they were both in. Rodriguez responded:



### *Evidence of the Offenses and Firearms Trafficking on Dylan Giron's phone*

Dylan Giron's cellphone was seized on January 26, 2024 when he was arrested for unlawful possession of ammunition after attempting to destroy evidence. The cellphone was searched pursuant to a warrant, and its contents reflect Dylan Giron's involvement in the charged offenses, as well as in the trafficking of firearms, including the trafficking of firearms with Elmer Bonilla.

In on video, an individual appears to be driving a Kia vehicle of the same model year as the stolen white Kia Sportage:

*Still from Phone*                    *Example of Kia interior*                    *Still from Phone*



In another video, filmed as a selfie-style Instagram post, tagged in the Mount Pleasant neighborhood near where Dylan and Gregory Giron live, an individual with a Hispanic accent narrates as he and two other young men show off the firearms in their waistbands as he states, "you lagging or what?"   While you cannot clearly see any faces, the individual filming appears to be heavier set than the other two.   At one point, the heavier set individual states "you know me, I keep two or better, and appears to show off two firearms with extended magazines protruding from

22

his pockets.   At another point, the individual next to the heavier set individual shows off a firearm in his waistband and a distinctive blue and gold belt.   That belt matches the belt recovered in the carjacked Hyundai vehicle.



In a series of messages, Dylan Giron sent a picture of a bottle of Don Julio Reposado tequila to another individual.   The picture appears to be taken inside of a vehicle (specifically the back passenger side of the vehicle).   A bottle of the same brand tequila was recovered in the carjacked Hyundai.

*Dylan Giron photo*                                     *Tequila in Hyundai*



Dylan Giron's phone also reflects internet searches for the locations of some of the carjackings.   For example, On January 23, 2024, at 12:15 p.m., Dylan Giron's phone searched for 7600 Eastern Avenue NW.   This is the approximate location of the armed carjacking of CW-6, which occurred eight hours earlier.   On January 25, 2024, at 11:57 a.m., Dylan Giron's phone searched for 3200 P Street NW.   This is the same block as the armed carjacking of CW-10, which occurred at 3215 P Street NW approximately nine hours earlier.   In addition to search history, Dylan Giron's phone contained saved images of news alerts for the above offenses:



The phone even included a photo taken of the location where the red Honda pilot carjacked from

CW-10.



The Government has not identified a public source for this photograph.

Dylan Giron's phone also contained numerous photos and videos of firearms, many of them taken in selfie-style.   In one video, an individual whose appearance is consistent with Dylan Giron, films himself as he flashes a black handgun with an extended magazine and green laser light.

25



As noted above, CW-8 reported that one of the suspects, who he identified as Hispanic, brandished a black handgun with a green laser light.

Dylan Giron's phone reflects that he communicated with Elmer Bonilla and others regarding the buying and selling of firearms.   For example, on January 11, 2024, Dylan Giron received a message stating "19x for 43x and 150."   Dylan Giron responded: "That joint gone my boy."   The prospective buyer asked what else he had, but Dylan Giron responded: "Everything gone."   On January 17, 2024, Elmer Bonilla messaged Dylan Giron an image of a firearm with the message "900 or 750 w no blat."   On January 22, 2024, Elmer Bonilla messaged Dylan Giron asking if he was home and explaining he was trying to obtain "the 26," an apparent reference to a Glock 26.

Further, Dylan Giron's cellphone contained numerous undated images of firearms and ski

masks.

 







 

The number of displayed firearms, including some with apparent prices, is consistent with the trafficking of firearms reflected in messages.

**The Arrest of Elmer Bonilla, Dylan Giron, and Christian Rodriguez**

Gregory Giron was indicted on one count of carjacking in March of 2023.   On August 1, 2024, a grand jury returned a superseding indictment, charging Dylan and Gregory Giron, Elmer Bonilla, and Christian Rodriguez.   All four defendants were charged in a Conspiracy to Commit Carjacking in violation of 18 U.S.C. §§ 371 and 2119.   Defendant Bonilla was charged with two counts of Carjacking, in violation of 18 U.S.C. § 2119, and two counts of Brandishing a Firearm

During a Crime of Violence, in violation of 18 U.S.C. § 924(c).   Defendant Rodriguez was

charged with one count of Carjacking, in violation of 18 U.S.C. § 2119, and two counts of

Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c).

Defendant Dylan Giron has currently only been charged in the conspiracy count.

Subsequent to the indictment, arrest warrants were issued for Dylan Giron, Bonilla, and

Rodriguez.   On August 9, 2024, law enforcement attempted to execute the arrest warrants and

residential warrants at each of their residences.   Defendant Bonilla was arrested at his residence

in Washington, D.C. and defendant Rodriguez was arrested in Virginia Beach.

Defendants Dylan Giron and Gregory Giron's home at 1406 Varnum Street NW was

searched.   Inside the home was Dylan and Gregory Giron's mother, five other adults, and one

juvenile.   The mother falsely identified herself and provided a false date of birth.   Multiple

other of the adults also provided false identification to police, including fake dates of birth (many

of them provided the same date of birth).   Based on their interactions, law enforcement believed

that most of the adults did not have legal status. Notably, these adults were sleeping in a

basement residence full of mattresses and containers of apparent urine.   The internal entrance to

the basement had been sealed and the basement was only accessible from the outside.   Law

enforcement described the conditions in the basement as decrepit.   In a room suspected to be

Dylan Giron's based on identification cards and a pay stub, law enforcement found a round of

ammunition and two plastic baggies of white powdery substance that field tested positive for

cocaine.   As noted above, this is at least the third time this residence has been searched by law

enforcement.

Dylan Giron was not present in the home when it was searched. FBI secured the

residence shortly after 6:00 AM and took a few hours to search residence.   Call logs reflect multiple calls between Dylan Giron and both parents during and after the search.   Specifically, Dylan Giron's father called him at 6:37 AM, 7:25 AM, 8:08 AM, 2:11 PM, 2:16 PM, 4:00 PM, and 6:14 PM on August 9.   Dylan Giron's mother called him at 11:49 AM, multiple times at 1:26 PM, 2:07 PM, 5:34 PM, and 11:20 AM.

Cellsite location data reflected that Dylan Giron went to his grandmother's home as of the afternoon of August 9, 2024 and remained there through the weekend.   Law enforcement responded to the grandmother's residence Monday, August 12th.   Dylan Giron and his family members all acknowledged that they were aware of the open arrest warrant.   Despite the warrant, Dylan Giron did not turn himself into law enforcement.   Dylan Giron was asked if he had a cellphone.   He lied, claiming he did not.   Law enforcement found Dylan Giron's cellphone underneath a bed in the grandmother's home.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).   The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community.   *See id.*

The crimes triggering such rebuttable presumptions need not be expressly included in the charging instrument.   *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (holding that "the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.")   Instead, "[if] the facts establish probable cause that the

31

defendant has [committed such an offense], the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community when applying the § 3142(g) factors."   *Id.*

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors:   (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.   *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).   *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.   *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Based on the 3142(g) factors, there are no conditions or combinations of conditions that will reasonably assure the safety of the community should Mr. Giron be released.

I.     **The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offense charged,

weighs in favor of detention.

Mr. Giron is charged in relation to a conspiracy to commit multiple armed carjackings which resulted in the beating and terror of multiple members of our community.  Based on evidence from his phone, Mr. Giron also appears to regularly possess and distribute firearms, despite being prohibited from doing so.  The Government acknowledges that Mr. Giron is currently only charged in a conspiracy count. But the evidence from his phone demonstrates that his involvement went beyond agreement.

In relation to the charged carjacking conspiracy, Mr. Giron faces a significant penalty: a maximum of fifteen years' imprisonment.   This significant penalty reflects the serious and deadly nature of armed carjackings. Carjackings are particularly dangerous offenses.   As this Court has noted with respect to armed robberies, "[t]he best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple people—could be killed or seriously injured." *United States v. Lee*, 195 F.Supp.3d 120, 129 (D.D.C. 2016) (finding the nature and circumstances weighing heavily in favor of detention in the case of a single armed robbery).   But the dangerousness is multiplied when the targeted victim is in or near a mobile conveyance like a vehicle.   If a carjacking victim makes the panicked decision to try to flee in their vehicle, they could strike and harm others or themselves.[3]   In some cases, the victim becomes

---

3 *See, e.g.*, Cory Smith, *Teen Sentenced to Juvenile Detention for DC Carjacking That Killed Uber Eats Driver*, NBC Washington, https://www.nbcwashington.com/news/local/teen-sentenced-to-juvenile-detention-for-dc-carjacking-that-killed-uber-eats-driver/2721236/ (noting that the victim died when he tried to flee in the targeted vehicle).

tangled or caught by the vehicle in the course of the carjacking, leading to injuries or death.[4] While Mr. Giron's victims made the choice not to try to run or use their vehicles, if they had, in a panicked decision, Mr. Giron's actions could have led to significantly more harm.

The significant penalties Mr. Giron faces are also reflective of the violent and repetitive conduct during these offenses.   Mr. Giron was a member of a conspiracy that repeatedly robbed, carjacked, and assaulted members of our community over the course of two months.   Four members of our community were beaten during the course of these offenses. And all of the victims were undoubtedly terrified when firearms were brandished at them, coupled with the implicit and explicit threat of death. Even those who *only* had their vehicles or possessions stolen have suffered the loss of their feeling of safety and security, particularly when these vehicles were outside of the victims' homes. And of course, the actions of this conspiracy cost thousands of dollars of losses for the victims.

The nature and circumstances of this offense weigh heavily in favor of detention.

## II.   <u>The Weight of the Evidence Against Mr. Giron is Formidable.</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[5]   The Government's case against Mr. Giron is very strong.

---

[4] *See, e.g.*, Chris Welty, *3 teens plead guilty in brutal carjacking that severed woman's arm, killed her*, WVUE/Gray News, https://www.kktv.com/2023/11/21/3-teens-plead-guilty-brutal-carjacking-that-severed-womans-arm-killed-her/.

[5] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."   2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."   *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge

34

As the Court knows, to prove a conspiracy, the Government must establish that a defendant agreed to commit a crime with others, knowingly joined in the agreement, and that any member of the conspiracy commit an over act in furtherance of the conspiracy.  *See generally United States v. Treadwell*, 760 F.2d 327, 337-338 (D.C. Cir. 1985).

Mr. Giron was caught in the act of attempting to destroy evidence in furtherance of this conspiracy.   Law enforcement observed him arrive at his home, enter, and then flee out the back with a trash bag.   That bag contained the proceeds and instrumentalities of these carjackings. And the communications from his phone make clear his intent.   He was on the phone with his brother and the other members of the conspiracy as law enforcement actively pursued his brother. Following his brother's arrest, he traveled with other members of the conspiracy to his home and, while still in communication with those conspirators, removed evidence from the home, with the intent to hide that evidence from law enforcement.

But while this is the most egregious evidence of Mr. Giron's involvement in the conspiracy, it is far from the only evidence.   Mr. Giron's phone—the phone recovered from his person in January—reflects searches for the addresses of two of the offense locations hours after the offenses occurred, along with news alerts about those offenses. Indeed, the phone contains a photo of unknown origin of police responding to the area where one of the carjacked vehicles was recovered.   This vehicle was the same vehicle for the offense occurring at one of the addresses Mr. Giron searched.   This reflects knowledge of the offenses which can only come from members

---

Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

of the conspiracy.

Further, videos and images on Dylan Giron's phone appear to reflect the inside of two of the carjacked vehicles.   And another video reflects Dylan Giron in possession of a firearm consistent with that described by one of the victims of the carjackings.   There is significant evidence of Dylan Giron's participation in this carjacking conspiracy.

Additionally, while Dylan Giron has not yet been charged with firearms trafficking, the evidence on his phone of such trafficking is irrefutable.   His messages reflect the discussion of selling and buying firearms, and the many pictures of those firearms on his phone, including many selfie-style images and videos, corroborate his possession and sale of firearms.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."   *Blackson*, 2023 WL 1778194, at *10.   This is such a case, and Mr. Giron should be detained pending trial.

## III.   The Defendant's History and Characteristics Merit Detention.

The third factor, Mr. Giron's history and characteristics, likewise weighs in favor of detention.

Mr. Giron has two prior convictions, one for misdemeanor Unlawful Entry (2020 CMD 005126), but the other for Cocaine Possession and Possession of a Large Capacity Ammunition Feeding Device in 2022 CF2 004961.   In the latter case, law enforcement executed a search warrant at Mr. Dylan Giron's home.[6]   Inside, law enforcement recovered a Smith & Wesson M&P

---

[6] This is the same home from which Mr. Giron attempted to secret evidence, and the same home

.40 caliber handgun with one round in the chamber and fifteen in the magazine, a Glock 23 .40 caliber firearm, loaded with one round in the chamber and fourteen in the magazine, multiple additional high-capacity magazines, more than eleven grams of cocaine, and 178 rounds of various ammunition.   Mr. Giron was on probation for this offense at the time of his involvement in this conspiracy, including when he was discussing the sale of firearms and collecting dozens of images of firearms.

But as evidenced by his phone, his conviction in relation to those two firearms, multiple extended magazines, and 178 rounds of ammunition, understate Mr. Giron's criminality. Mr. Giron has the ready ability to acquire firearms and ammunition and no compunction about doing so.   He flaunts his firearms and appears to be engaged in the trafficking of firearms to others.

Therefore, the third factor, the history and characteristics of the person, weighs in favor of detention.

## IV.   **Mr. Giron Presents a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by Mr. Giron's release, similarly weighs in favor of detention.

Mr. Giron was a member of a violent conspiracy that threatened multiple members of our community over an extended period of time.   He has indicated the ready ability to find and display firearms.   Moreover, he appears to be engaged in illegally providing those firearms to others who presumably cannot legally purchase firearms from licensed dealers.   Mr. Giron has indicated his willingness to destroy evidence to hide his and his conspirators' criminal acts.   He has done so brazenly:   dashing into a home that was being secured by law enforcement to gather and destroy

---

which was searched on August 9, 2024.

the proceeds of this conspiracy.

Mr. Giron represents a danger to our community and should be detained pending trial.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain

Mr. Giron pending trial on these charges.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:        _/s/ Cameron A. Tepfer_
Cameron A. Tepfer
D.C. Bar No. 1660476
Sarah G. Martin
D.C. Bar 1612989
Assistant United States Attorneys
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov